# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **DAVID CHANEY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:07-CV-00727-RDP |
| } | |
| **MICHAEL J. ASTRUE, Commissioner** } | |
| **of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff David Chaney brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), and seeks judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

## I.    Proceedings Below

Plaintiff filed his application for SSI benefits on October 8, 2003.  (Tr. 201).  Plaintiff filed an application for DIB at the same time.  (Tr. 59).  Plaintiff alleges a disability onset date of July, 1, 2003 (Tr. 66, 73).  After Plaintiff's application was denied (Tr. 33), he requested a review of that decision by an Administrative Law Judge ("ALJ").  (Tr. 38-40).  ALJ Vincent P. Intoccia heard Plaintiff's case on Wednesday, August 24, 2005, in Selma, Alabama.  (Tr. 263).  In his decision dated January 21, 2006, the ALJ determined that Plaintiff was not eligible for either SSI or DIB

benefits because he failed to meet the disability requirements of the Social Security Act and retained the residual functional capacity ("RFC") to perform certain jobs that exist in significant numbers in the national economy. (Tr. 10-30). Plaintiff requested the Appeals Council to review the ALJ's decision. (Tr. 5). On August 11, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, and that decision became the final decision of the Commissioner. (Tr. 5).

At the time of the hearing in question, Plaintiff was forty-nine years old and had received a high school education. (Tr. 266). Plaintiff previously worked as a truck driver. (Tr. 66). Plaintiff alleges he suffers from seizures, high blood pressure, and heart complications. (Tr. 65). According to Plaintiff, these problems have rendered him unable to engage in substantial gainful activity since 2003. (Tr. 66). Plaintiff met the insured status requirements of the Act as of the alleged onset date. (Tr. 29).

Plaintiff's medical records show that in June 2003, he went to the Rush Foundation Hospital emergency room with complaints of a seizure. (Tr. 138). A CT scan of Plaintiff's brain showed nothing unusual. (Tr. 140). In July 2003, Plaintiff sought treatment at Rush Foundation Hospital after a second seizure at home. (Tr. 113, 115). Plaintiff suffered another seizure in the emergency room. (Tr. 113, 115). The doctor gave Plaintiff Dilantin and he did not experience any more seizures while in the hospital. (*Id.*). An MRI scan of the brain revealed minimal vessel disease, but there was no acute infarction or mass identified. (Tr. 113). Dr. Rafique Ahmad suggested that Plaintiff's seizures may be drug induced. (Tr. 116). Dr. Ahmad discussed at length with Plaintiff that he should refrain from drinking alcohol or using recreational drugs. (Tr. 116). At the time of Plaintiff's first seizures, Plaintiff drank about one pint of alcohol and smoked one pack of cigarettes

a day. (Tr. 117). Plaintiff claimed he did not use illegal substances, but his drug tests showed amphetamines in his system. (Tr. 113, 116).

In August 2003, Plaintiff had an echocardiogram showing a mildly enlarged left ventricle with moderately depressed LV systolic function, global hypokinesis, estimated LVEF in the range of 30-35%, mild concentric left ventricular hypertrophy, mild aortic root enlargement, trace aortic regurgitation, and trace pulmonary regurgitation. (Tr. 135). Plaintiff's Dilantin levels were below therapeutic range. (Tr. 137).

Dr. Ahmad saw Plaintiff in September 2003 for a follow-up of seizure disorder, and his neurological examination was normal. (Tr. 155). Plaintiff's diagnoses were complex partial epilepsy with secondary degeneralization, lacunar stroke - asymptomatic, hypertension, and low ejection fraction. (Tr. 155). Dr. Ahmad advised Plaintiff not to drive or work around heavy machinery. (*Id.*).

In October 2003, after an abnormal echocardiogram, Dr. Ahmad referred Plaintiff to Dr. Reynolds for a consult. (Tr. 142-44). Plaintiff received a diagnosis of dilated cardiomyopathy probably secondary to systemic arterial hypertension. (Tr. 143). Plaintiff reported to Dr. Reynolds that he had experienced another seizure in mid-October. (Tr. 142). Dr. Reynolds found Plaintiff was in no apparent distress, but recommended a heart catheterization which was performed that day. (Tr. 142-50). The cardiac catheterization revealed normal heart functioning. (Tr. 149-50).

On December 1, 2003, Dr. Keith Guinn examined Plaintiff. (Tr. 169). Plaintiff denied any specific complaints. (Tr. 169). Plaintiff denied shortness of breath and chest pain, and had no other systemic complaints. (*Id.*). Dr. Guinn found a low Dilantin level and noted that Plaintiff was not taking all of his medications because he had finished his prescriptions. (*Id.*).

In December 2003, Plaintiff went to the emergency room twice with complaints of seizure. (Tr. 221-30). Again, both times Plaintiff's Dilantin levels were low, and in addition his ethanol levels were elevated. Dr. R.E. Williams diagnosed Plaintiff with seizure, acute alcohol abuse/dependance, and acute alcohol intoxication. (Tr. 222). The doctor advised him to stop drinking because alcohol could cause more seizures. (Tr. 223). On December 30, 2003, Plaintiff told Dr. Ahmad that he had experienced two seizures in the last ten days. Plaintiff admitted that he still drank and that sometimes he did not take his medication. (Tr. 151).

Dr. Walid Freij examined Plaintiff on March 15, 2004. (Tr. 157-59). Plaintiff told the doctor that he had not drunk alcohol since the seizures had begun. (*Id.*). Plaintiff also denied drug use. (*Id.*). Plaintiff's diagnoses included alcoholism, possible amphetamines abuse, seizure disorder, hypertension, heart disease, and shortness of breath. (*Id.*). Dr. Freij concluded that Plaintiff would gain full control of his seizures if he stopped abusing any substances and continued taking medication. (Tr. 159). Dr. Freij said Plaintiff could sit, stand, and carry, and walk and lift (with limitations). (*Id.*). Dr. Freij said Plaintiff should not drive. (*Id.*).

Dr. Michael Gordon examined Plaintiff on June 1, 2005. (Tr. 242). Plaintiff denied use of alcohol or drugs, but said he still smoked tobacco. (*Id.*). Dr. Gordon completed a Physical Capacities Evaluation and a Clinical Assessment of Pain form. (Tr. 192-94). These forms reported that Plaintiff could lift ten pounds occasionally and five pounds frequently. (Tr. 192). Dr. Gordon also estimated that Plaintiff could sit for fifteen minutes or stand or walk for thirty minutes. (*Id.*). Dr. Gordon judged that Plaintiff did not have significant pain, but that side effects from his medication combined with physical activity would disable him from functioning at a productive level. (Tr. 193-94).

On July 18, 2005, Plaintiff again went to the emergency room for a seizure. (Tr. 210-16). Dr. James Snyder concluded Plaintiff had sub-therapeutic Dilantin levels and was medically noncompliant. (Tr. 211).

At the hearing before the ALJ, a medical expert, Dr. James Anderson, testified that based upon Plaintiff's medical history, Plaintiff did not meet or equal the Secretary's listings for disability status. (Tr. 285-87). Moreover, Dr. Anderson testified that Plaintiff's medical records showed medical non-compliance. (Tr. 287). Dr. Anderson concluded that if Plaintiff would comply with medical advice and not abuse substances, he would be able to perform light work activities. (Tr. 287).

**II.     ALJ Decision**

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed

in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since July 1, 2003. (Tr. 29, Finding 2). Plaintiff met the disability insured status requirements of the Social Security Act as of this onset date. (Tr. 29, Finding 1). Based on the medical evidence presented, the ALJ concluded that Plaintiff has the following "severe" impairments: status post lacunar stroke - asymptomatic - no significant stenosis; chronic alcohol abuse/dependance; possible abuse of amphetamines; generalized seizure disorder - suspect related to alcoholism - with sub-therapeutic Dilantin levels and dilated cardiomyopathy probably secondary to hypertension. (Tr. 29, Finding 3). However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that have significantly limited (or are expected to limit) the ability to perform basic work-related activities for twelve consecutive months. (Tr. 22).

According to the ALJ, Plaintiff's allegations of pain and functional limitations are not credible. (Tr. 26). After considering all the medical evidence, including Plaintiff's subjective complaints, the ALJ found that Plaintiff retains the RFC to perform jobs that exist in significant numbers in the national economy. (Tr. 30, Finding 11). The ALJ found that Plaintiff has the RFC

to occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds. (Tr. 29, Finding 6). The ALJ also found that Plaintiff can stand or walk for 6 hours in an 8-hour workday. (Tr. 29, Finding 6). The ALJ also mentioned that Plaintiff's unpersuasive appearance and demeanor while at the hearing were influential to his decision. (Tr. 27). The ALJ also considered Plaintiff's medical noncompliance. (*Id.*). The ALJ stated at the end of his opinion that even if he were to find Plaintiff was unable to "perform work related activities on a sustained basis it is clear that any such disability arises from and is caused by his alcohol abuse," and that Plaintiff's abuse of alcohol would be material to any finding of disability. (Tr. 29). Thus, the ALJ ruled that Plaintiff is not disabled as the Act defines that term and that Plaintiff is not entitled to a period of benefits. *See* (Tr. 14), 20 C.F.R. §404.1520(b).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed or, in the alternative, remanded for further consideration. (Doc. #7, at 7). Plaintiff asserts four reasons why this court should grant the relief he seeks: (1) the ALJ failed to give the treating physician's opinion determinative weight; (2) the ALJ erred by not first determining whether Plaintiff was disabled before concluding that alcoholism was a contributing factor material to Plaintiff's disability; (3) the ALJ erred by failing to comply with SSR 82-59 and SSR 96-7p and Eleventh Circuit case law in finding that Plaintiff was non-compliant with prescribed medication; and (4) the ALJ erred by giving controlling and determinative weight to the opinion of the medical expert who was a non-examining, reviewing physician. (Doc. #2, at 2-7).

**IV.     Standard of Review**

This court's review of the ALJ's decision is limited to examining whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

8

## V.        Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.        The ALJ Gave Proper Weight to the Opinions of Plaintiff's Treating Physicians.

Plaintiff argues that the ALJ improperly disregarded the opinions of Plaintiff's doctors, Dr. Gordon and Dr. Freij.  Plaintiff first argues that Dr. Gordon's findings should have been given greater weight by the ALJ, as Dr. Gordon was a "treating physician." (Doc. #7, at 2-3).  Plaintiff asserts that Dr. Gordon should be considered a treating physician because he stated when he saw Plaintiff on June 1, 2005, that he had been treating Plaintiff since May 2004. (Doc. #7, at 3).  Dr. Gordon also stated that he had seen Plaintiff previously at another clinic as his treating internist. (Tr. 243).  Plaintiff argues that, because Dr. Gordon was a treating physician, his opinions regarding Plaintiff's inability to work should have been given greater weight by the ALJ.  (Doc. #7, at 3).

The court recognizes that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not crediting the treating physician's diagnosis.  *See, e.g., Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985).  However, the weight afforded to a medical opinion is contingent upon whether the medical source "presents relevant evidence to support an opinion, particularly medical signs and laboratory findings...[and the] explanation source provides for an opinion." *See* 20 C.F.R. § 416.927(d)(3).  An ALJ may properly discredit the opinion of a treating source as long as the ALJ shows good cause in his decision.  *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

The court agrees with Defendant that the ALJ adequately explained why he was justified in giving little weight to Dr. Gordon's opinions. First, Dr. Gordon only saw Plaintiff three times. The regulations explain that "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(I); 416.927(d)(2)(I). Moreover, the ALJ explained that Dr. Gordon's report fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled. (Tr. 25). This reasoning–coupled with the fact that, as a whole, the medical evidence of record contradicts Dr. Gordon's conclusions regarding Plaintiff's functional limitations and symptoms–suffices as "good cause" for not heeding the treating physician's diagnosis. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (explaining that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records").

Plaintiff's next argument concerns Dr. Freij. Dr. Freij gave Plaintiff a neurological examination on March 15, 2004. At the hearing, the ALJ asked follow-up questions about Dr. Freij's report regarding Plaintiff's seizure activity and his compliance with the medications. (Tr. 289-90). The ALJ did not ask any follow-up questions about Plaintiff's shortness of breath, his heart disease, or Dr. Freij's thoughts on Plaintiff's ability to sit, stand, walk, or lift/carry. (*Id.*). Plaintiff argues that the ALJ had a duty to re-contact Dr. Freij to determine the specific limitations given in his report from the examination. (Doc. #7, at 4). The Code of Federal Regulations states that the ALJ will "seek additional evidence or clarification" from the claimant's medical source when the

report from claimant's source "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information." 20 C.F.R. § 404.1512(6)(2)(e)(1). In evaluating whether it is necessary to remand because of failure to re-contact a medical source, the court must look to "whether the record reveals evidentiary gaps which would result in unfairness or clear prejudice." *Johnson v. Barnhart*, 138 Fed.Appx.186, 189 (11th Cir. 2005) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

In this case, the ALJ gave his reasoning as to why he partially discredited the medical opinion of Dr. Freij. Dr. Freij gave his opinion in his examination report. Following his medical observations, Dr. Freij stated that, in his opinion, it would be very difficult for Plaintiff to find a job. (Tr. 159). The ALJ rightfully gave little weight to that statement. (Tr. 23). It is up to the Commissioner, rather than a claimant's doctor, to determine whether Plaintiff is technically disabled or can perform work in the economy. 20 C.F.R. § 416.927(e), *See Tauber v. Barnhart*, 438 F.Supp 2d 1366, 1377 (11th Cir. 2006). The ALJ also had no duty to re-contact Dr. Freij regarding his other statements, as there are no evidentiary gaps that would result in unfair prejudice. The ALJ understood Dr. Freij's examination report and gave the proper weight to it while making his decision about Plaintiff's disability. Specifically, the ALJ observed that Plaintiff consistently denied chest discomfort, shortness of breath, orthopnea, or syncope. (Tr. 22, 142, 162, 240). As such, he found there were no evidentiary gaps and therefore no need to ask Dr. Freij any follow-up questions concerning his comments that Plaintiff's ability to walk and lift would be limited by ischemic heart disease. Therefore, the ALJ had no duty to re-contact Dr. Freij.

### B. The ALJ Properly Determined That Plaintiff Was Not Disabled and Did So Without Consideration of His Substance Abuse.

Plaintiff argues that the ALJ erred by not first determining whether Plaintiff was disabled before concluding that alcoholism was a contributing factor material to Plaintiff's disability. (Doc. #7, at 4). At the very end of his opinion, the ALJ stated:

> Even if I were to have found that the claimant is currently unable to perform work related activities on a sustained basis it is clear that any such disability arises from and is caused by his alcohol abuse. It is plain on this record that, if the claimant were truly to cease all use of alcohol, he would not in any sense be disabled. Thus, his abuse of alcohol would necessarily be material to any finding of disability. Accordingly, even if I had found the claimant disabled, he would not be entitled to any benefits.

(Tr. 29). Plaintiff correctly points out that an ALJ must first determine whether a claimant is disabled before reaching the issue of whether alcoholism is a contributing material factor. *See* 20 C.F.R. § 404.1535. Unfortunately for Plaintiff, the record does not support his assertion that the ALJ failed to do that.

There is substantial evidence that the ALJ found Plaintiff not disabled regardless of his alcohol abuse. The ALJ used the five-step analysis for determining disability and considered all of Plaintiff's severe impairments before he determined that Plaintiff is not disabled. (*See* Doc. #8, at 11). First, he determined that Plaintiff did not engage in any substantial activity at the date of the trial. (Tr. 14). As to the second step, the ALJ determined that Plaintiff suffers from some severe impairments, but that some of the claimed impairments are not severe. (Tr. 22). In applying the third step, the ALJ determined that none of Plaintiff's impairments meet or equal those in 20 C.F.R. 404. (*Id.*). At the fourth step, the ALJ determined that Plaintiff does not have the ability to perform any past relevant work. (Tr. 28). Finally, the ALJ found at the fifth step that Plaintiff has the

residual functional capacity to perform jobs existing in significant numbers in the national economy and is therefore not disabled. (*Id.*).

It was only after determining Plaintiff was not disabled under the five-step method that the ALJ mentioned Plaintiff's alcoholism in connection with his disability analysis. The ALJ's statement at the end of his opinion was merely a separate observation unrelated to his determination of Plaintiff's disability status.[1] The court views the ALJ's statement as nothing more than an effort to "cover his bases" regarding the disability determination. The fact remains that the ALJ made the determination that Plaintiff was not disabled separately from his consideration of the effect of Plaintiff's possible alcohol abuse on his health problems. Therefore, there is substantial evidence to support the ALJ's finding.

> **C.     The ALJ Complied with SSR 82-59 and SSR 96-7p and Eleventh Circuit Case Law in Finding That Plaintiff Was Non-Compliant with Prescribed Medication.**

Plaintiff argues that the ALJ failed to comply with SSR 82-59 in finding that Plaintiff was noncompliant with the prescribed treatment. SSR 82-59 says: "Individuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment." (Emphasis added). One such justifiable cause would be:

> The *individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable*. Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored.

---

[1]To be clear, the ALJ found that Plaintiff was not disabled. However, he stated that *even if* he had found Plaintiff disabled, Plaintiff would not be eligible for benefits because he considered Plaintiff's alcoholism to be a cause of and therefore a material factor in any possible disability. (Tr. 29).

*See* SSR 82-59 (emphasis added).  Plaintiff also argues that the ALJ failed to comply with SSR 96-7p in discrediting Plaintiff for his failure to obtain treatment without first considering his explanations for lack of treatment.  SSR 96-7p states:

> The individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

In invoking both SSR 82-59 and SSR 96-p, Plaintiff essentially argues that the ALJ erred by not sufficiently investigating Plaintiff's situation in determining whether Plaintiff's alleged noncompliance with medications and treatment could be excused for failure to afford medication or for other acceptable reasons.

While a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, his noncompliance is excused.  *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  However, even if an ALJ fails to consider the claimant's ability to afford medication, this is not reversible error if the ALJ did not significantly base his decision that the claimant was not disabled on a finding of noncompliance. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

The ALJ adequately considered all of the explanations that Plaintiff provided as well as information in the record that might have explained Plaintiff's noncompliance.  Plaintiff testified in the hearing that it was difficult for him to obtain medication because he could not afford to pay for it.  (Tr. 272-73).  The ALJ duly considered this possible explanation for noncompliance, stating that

14

"even while the claimant was insured under Blue Cross Blue Shield, he was non-compliant." (Tr. 27). The ALJ deduced from the fact of Plaintiff's noncompliance while his medical costs were covered that his noncompliance was not a result of his inability to afford medication. This conclusion is supported by substantial evidence in the record. If the reason for Plaintiff's noncompliance was his inability to pay, he at least should have been compliant while his medication was paid for by insurance. The ALJ determined there was no justifiable cause for Plaintiff's noncompliance; therefore, the ALJ was justified in concluding that Plaintiff was noncompliant for purposes of his disability determination.

> **D.     The ALJ Did Not Err by Giving Determinative Weight To the Opinion of the Medical Expert.**

Plaintiff argues that the ALJ erred by giving controlling and determinative weight to the opinion of Dr. Anderson, a medical expert who testified at the hearing before the ALJ, but who was a non-examining, reviewing physician. (Doc. #7, at 6). Plaintiff's argument is somewhat confusing. Plaintiff argues that Dr. Anderson testified that he agreed with certain conclusions reached by Dr. Freij, one of Plaintiff's treating physicians.   Plaintiff argues that if Dr. Anderson agreed with Dr. Freij's conclusions, then his conclusion that Plaintiff does not have a disabling health conditions should be entitled to little weight because he should also have found that Plaintiff was disabled because of cardiomyopathy rather than seizures. Plaintiff asserts that the opinion of a reviewing, non-examining physician, when contrary to those of examining physicians, is entitled to little weight. Plaintiff also points out that, at the hearing, Dr. Anderson testified that the medical records he reviewed did not show medical noncompliance attributable to alcohol abuse after December 2003.

The court finds this argument to be closely related to Plaintiff's first argument regarding the weights assigned by the ALJ to various doctors. As discussed above, an ALJ may rely on a non-examining physician's opinion when that physician's opinion is consistent with the opinions of other examining physicians. *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991). Here, Dr. Anderson's opinion was consistent with other evidence in the record. For example, Dr. Freij observed that Plaintiff could have full control of his seizures if he stopped abusing any substances. (Tr. 159). Dr. Reynolds found that Plaintiff's coronary arteries were normal and observed that Plaintiff denied any chest discomfort, dyspnea on exertion, shortness of breath, orthopnea, near syncope or syncope. (Tr. 142). Dr. Williams diagnosed Plaintiff with acute alcohol abuse/dependance and acute alcohol intoxication. (Tr. 222). He advised Plaintiff to stop drinking because alcohol could cause more seizures. (Tr. 223). In December 2003, Plaintiff told Dr. Ahmad that he experienced two seizures in the last ten days. Plaintiff admitted that he still drank and that sometimes he did not take his medication. (Tr. 151). Dr. Guinn noted a low Dilantin level and that Plaintiff was not taking all of his medications. (Tr. 169).

Based on the foregoing and other evidence, the record is replete with opinions by treating physicians that Plaintiff's impairments are substantially caused by alcohol abuse and medical noncompliance. Therefore, it follows that the ALJ did not err in placing weight on the opinion of Dr. Anderson because his opinion was consistent with medical records and the opinions of these other examining physicians.

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.

The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

    **DONE** and **ORDERED** this   29th   day of September, 2008.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE